# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**
**July 30, 2024**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**NICK BAJADA and ERIN BAJADA,**
**Defendants Below, Petitioners**

**v.) No. 23-ICA-292**       (Cir. Ct. of Jefferson Cnty., Case No. CC-19-2021-C-5)

**CRYSTAL LAKE PROPERTY OWNERS' ASSOCIATION, INC.,**
**Plaintiff Below, Respondent**


## MEMORANDUM DECISION

Petitioners Nick Bajada and Erin Bajada ("Bajadas") appeal three orders from the Circuit Court of Jefferson County: the January 10, 2023, order denying the Bajadas' motion to dismiss, the January 10, 2023, order granting Respondent Crystal Lake Property Owners' Association, Inc.'s ("Crystal Lake") summary judgment on all claims, and the June 15, 2023, final order awarding Crystal Lake damages and attorney's fees. Crystal Lake filed a response.[1] The Bajadas filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's orders is appropriate under Rule 21 of the Rules of Appellate Procedure.

Established on May 2, 1983, Crystal Lake is a nonprofit corporation which operates as the homeowners' association of the Valley View subdivision. The subdivision was created on June 7, 1972, and its plats were recorded with the County Clerk of Jefferson County on August 29, 1974, and September 15, 1975. The plats reference jointly owned community properties, including a 1.81-acre recreational reserve area ("Recreational Area"). The Bajadas are members of Crystal Lake, having acquired Lots 31, 32, 35, and a portion of Lot 33 within the subdivision on January 15, 2016. It is undisputed that the subdivision is governed by Crystal Lake and that Crystal Lake has bylaws which provide for its governance and management through a five-member board of directors.

On January 14, 2021, Crystal Lake filed a complaint against the Bajadas in circuit court, seeking a declaratory judgment, injunctive relief, and damages, which resulted from

---

[1] On appeal, the Bajadas are self-represented. Crystal Lake is represented by Christopher K. Robertson, Esq., and Christopher P. Stroech, Esq.

1

the Bajadas' construction and use of an access road through the subdivision's Recreational Area. This construction resulted in the removal of several trees, vegetation, and topsoil. The Bajadas stated they constructed the road to gain more convenient access to Lot 35 where they operated a farm for business purposes, and that they used the road as ingress and egress to the farm for their vehicles and farm equipment.

On February 23, 2021, the Bajadas filed their answer and asserted a counterclaim, alleging that Crystal Lake had breached various fiduciary duties it owed to Crystal Lake's members and sought court costs, attorney's fees, and punitive damages. These alleged violations included Crystal Lake's failure to enforce its governing documents, failure to limit expenditures, committing certain unauthorized actions without a vote of its members, and committing several violations of the Uniform Common Interest Ownership Act, West Virginia Code §§ 36B-1-101 to -4-120.

On August 23, 2022, Crystal Lake filed an amended complaint, adding a breach of contract claim for the Bajadas' failure to pay membership assessments for the past three years. In total, the amended complaint alleged three causes of action: declaratory judgment (Count I); trespass and damage to the subdivision's community property (Count II); and breach of contract (Count III). Crystal Lake sought injunctive relief, remediation costs for the Recreation Area, judgment for the Bajadas' unpaid membership assessments, and attorney's fees and costs. On September 7, 2022, the Bajadas filed an answer to the amended complaint and reasserted their existing counterclaim.[2]

Crystal Lake filed a motion for summary judgment as to the Bajadas' counterclaim on October 5, 2022, and on October 10, 2022, it filed a motion for summary judgment on its claims under the amended complaint. On October 19, 2022, the Bajadas, appearing self-represented, filed a motion to dismiss, alleging for the first time that Crystal Lake did not have the authority to file its original complaint in January of 2021 because at that time, Crystal Lake's five-member board only had four members.[3] The Bajadas maintained that the lack of a fifth member rendered Crystal Lake defunct and under its bylaws it had no authority to take action until the board vacancy was filled.

On January 10, 2023, the circuit court entered two of the three orders now on appeal. First, it entered its order denying the Bajadas' motion to dismiss. In this order, the circuit court found that notwithstanding its one vacancy, Crystal Lake's bylaws and the provisions

---

[2] Based upon the record, the Bajadas were represented by counsel for a portion of this litigation. The record reflects that counsel filed the answer to the amended complaint and answered some discovery requests. From the record, the Bajadas have appeared as self-represented litigants since October 19, 2022.

[3] According to the record, the fifth board member had recently resigned because she had sold her home and moved out of the subdivision.

2

of the West Virginia Nonprofit Corporation Act state that only a majority of its governing board is required to have a quorum.[4] *See* W. Va. Code § 31E-8-824 (2002) (stating a majority of board members constitutes a quorum and a majority vote constitutes an action of the board). The circuit court determined that as a five-member board, three board members constituted a quorum and were required to be present at meetings for Crystal Lake to take official action and, thus, its four members had the authority to authorize the filing of the original complaint on January 14, 2021.

The circuit court also entered its order granting Crystal Lake summary judgment on its claims under the amended complaint, as well as on the Bajadas' counterclaim. The circuit court found that Crystal Lake was entitled to summary judgment on Counts I and II of its amended complaint because the Bajadas had constructed an unauthorized road and damaged the subdivision's jointly owned community property. On this issue, the circuit court also rejected the Bajadas' claim that there was no language in their chain of title that provided that the Recreational Area had to be used exclusively for recreational purposes, prohibited construction of the road, or prevented them from taking unilateral action. In support of their position, the Bajadas pointed to language from a corrective deed dated November 7, 1975, which stated "common with the other lot owners the non-exclusive right to use the two recreational reserves designated on the plat recorded in Plat Book 3, at page 81." The circuit court found that this language was the same ordinary use language found in every deed conveying a lot within the Valley View subdivision, that the language ensured each Crystal Lake member had the right to access the area for recreational use, and that the language did not permit any individual member to unilaterally alter the area for their own purposes, including the Bajadas' construction of a road.

It was further determined that section 10.6 of Crystal Lake's bylaws identifies the Recreational Area and then provides "[a]ny proposed use of these properties above and beyond that of normal recreational purposes shall require the approval of a majority of the members of the association." The circuit court found that the Bajadas admitted in their deposition testimony that they constructed the road without first seeking permission of Crystal Lake and its members, making the fact they took unauthorized action uncontroverted. Likewise, it determined that the construction of a road for farming purposes, vehicle use, or additional property access clearly constituted a use of the Recreational Area that was outside the scope of normal recreational activities.

Next, the circuit court granted Crystal Lake summary judgment on its breach of contract claim for the Bajadas' unpaid membership assessments, noting that there was no dispute that Crystal Lake had the authority to assess dues upon its members. Here, the circuit court found that the Bajadas admitted in their deposition testimony that they paid membership assessments from 2016-2018, but that they had not paid any dues from 2019 through 2022. As justification for nonpayment, the Bajadas both stated in their deposition

---

[4] This Act is referenced by Crystal Lake's bylaws.

that they were not paying assessments because, in their opinion, Crystal Lake was not fulfilling its duties under the bylaws with respect to upkeep and maintenance of the subdivision's roads and community properties. The circuit court rejected that defense. Instead, it found that Crystal Lake's bylaws and amended articles of incorporation contained express language which established its authority to assess dues and that its members had a legal obligation to pay them.

Specifically, the circuit court noted that section 2.2 of Crystal Lake's bylaws provides for the assessment and collection of membership dues. Further, section III, subpart (f) of the amended articles of incorporation provides:

> Pursuant to such By-laws as [Crystal Lake] shall adopt and consistent with legal deed requirements, to make rules and regulations for the assessment of property owners in said subdivision for the maintenance of roads owned by property for which a right of way has been granted by deed, for the maintenance of community property, and for the taxes owned on community property.

Based upon Crystal Lake's authority to assess and collect dues from its members, and the Bajadas' admitted failure to pay their 2019-2022 assessments, the circuit court concluded the Bajadas were properly assessed dues and that they were legally obligated to pay the same but failed to do so, making summary judgment appropriate.

Turning to the Bajadas' counterclaim, the circuit court found that they could not establish the elements necessary to maintain a cause of action for breach of fiduciary duty. *See State ex rel. Affiliated Const. Trades Found. v. Vieweg,* 205 W. Va. 687, 701, 520 S.E.2d 854, 868 (1999) (Workman, J., concurring) (observing that "[a]lthough [the Supreme Court of Appeals of West Virginia] has not previously identified precisely the elements of a cause of action for a breach of a fiduciary duty, courts have held that the elements of such a cause of action are the existence of the fiduciary relationship, its breach, and damage proximately caused by that breach."). The circuit court determined that the counterclaim was based upon bald assertions, without evidentiary support, and that mere allegations could not preserve a claim or create a genuine issue of material fact. Further, the Bajadas were not entitled to damages because their counterclaim only sought punitive damages, but not compensatory damages, and our case law was clear that punitive damages cannot be recovered when compensatory damages are not awarded. *See* Syl. Pt. 1, *Garnes v. Fleming Landfill, Inc.*, 186 W. Va. 656, 658, 413 S.E.2d 897, 899 (1991) ("Syllabus Point 3 of *Wells v. Smith,* 171 W.Va. 97, 297 S.E.2d 872 (1982), allowing a jury to return punitive damages without finding compensatory damages is overruled. Punitive damages must bear a reasonable relationship to the potential of harm caused by the defendant's actions.").

4

Next, the circuit court determined that the Bajadas' several Uniform Common Interest Ownership Act ("Act") claims failed because Crystal Lake was formed before the Act became effective on July 1, 1986, and that the Act's retroactive application was limited to the thirteen sections identified under West Virginia Code § 36B-1-204(a) (1986). The circuit court found that none of the Bajadas' claims fell within those retroactive sections and could not be maintained. *See Galford v. Friend*, 2014 WL 5311389, at *7 (W. Va. Oct. 17, 2014) (memorandum decision) (finding that only the thirteen sections identified under West Virginia §36B-1-204(a) are retroactive and applicable to preexisting common interest communities).

In this summary judgment order, the circuit court granted Crystal Lake summary judgment on all of its claims and dismissed the Bajadas' counterclaim with prejudice. However, the order expressly stated it was not a final order because the circuit court had not ruled on Crystal Lake's requests for damages and attorney's fees, which would be determined following a subsequent evidentiary hearing.

The circuit court held an evidentiary hearing on damages on April 24, 2023. Crystal Lake presented the testimony of H. Peddicord, an expert witness in forestry who had inspected the Recreational Area and prepared a report regarding its restoration. This report recommended the planting of shade tolerant trees, addition of topsoil, and the application of herbicide. Crystal Lake also elicited the testimony of E. Washington, a landscape engineer. Mr. Washington also inspected the Area and prepared a written report, which made recommendations similar to Mr. Peddicord's. Mr. Washington conservatively estimated that restoration of the damaged area would cost $7,394.40 for supplies and labor. At the time of his testimony, Mr. Washington testified that since the completion of his report, supply costs had risen between fifteen to twenty percent.

Crystal Lake also presented the testimony of its president, J. Cummins. Mr. Cummins prepared a dues statement, which stated that the Bajadas owed $7,098.94 for past dues, plus interest. He testified that Mr. Bajada had refused to pay his assessments and told Mr. Cummins that Crystal Lake would have to sue him. Mr. Cummins also testified as to the soil and types of trees removed by the Bajadas; this included several photographs and two videos of Mr. Bajada cutting the road through the Recreational Area. He further indicated that Crystal Lake had yet to obtain an estimate for the herbicide treatment. Mr. Cummins confirmed that Crystal Lake had incurred $16,654.77 in attorney's fees as reflected by the itemized fee petition filed by its counsel, but that those fees did not account for the attorney's fees incurred after the fee petition was filed, nor did it include attorney's fees for the insurance carrier's counsel.

In its final order dated June 15, 2023, the circuit court noted its findings contained in the January 10, 2023, summary judgment order. Based upon that ruling and the evidence adduced on April 24, 2023, the circuit court awarded Crystal Lake $7,098.94 for the unpaid assessments and $7,394.40 as a fair and reasonable repair cost for the Recreation Area. The

circuit court then found that the Bajadas had acted in bad faith, vexatiously, wantonly, or for oppressive reasons by their actions as shown by the videos in the record, as well as by their documented displays of open hostility towards their neighbors and Crystal Lake's board members. It was also determined that the Bajadas lacked candor in this case and acted with the intent to cause undue expense upon Crystal Lake. Based on those factors, the circuit court found that the Bajadas' conduct warranted an award of attorney's fees and costs to Crystal Lake in the amount of $16,654.77. The final order entered a joint and several judgment against the Bajadas in the amount of $31,148.11. This appeal followed.

In this appeal, we are presented with three orders. The Bajadas first appeal the circuit court's order denying their motion to dismiss. In that regard, our standard of review is *de novo*. Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 773, 461 S.E.2d 516, 519 (1995) ("Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*."). The Bajadas also appeal the circuit court's January 10, 2023, and June 15, 2023, orders. These two orders constitute the circuit court's full adjudication on the issue of summary judgment and therefore we will consider them together, applying a *de novo* standard of review. Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 190, 451 S.E.2d 755, 756 (1994) ("A circuit court's entry of summary judgment is reviewed *de novo*."); Syl. Pt 3, *Cox v. Amick*, 195 W. Va. 608, 609, 466 S.E.2d. 459, 460 (1995) ("A circuit court's entry of a declaratory judgment is reviewed *de novo*.").

To begin, we note that the Bajadas' brief contains sixteen assignments of error. These alleged errors are not concisely set forth and significantly overlap. Therefore, where necessary, we have consolidated these assignments of error. Upon review, we have determined that three issues comprise the crux of the Bajadas' appeal; those issues are that the circuit court erred by (1) denying their motion to dismiss, (2) granting summary judgment to Crystal Lake, and (3) failing to address conflicts of interest in the case.

We first address whether the circuit court erred when it denied the Bajadas' motion to dismiss. In their motion, the Bajadas' sole argument was that pursuant to Crystal Lake's bylaws, its board of directors could not lawfully operate when its five-member board only had four members. The circuit court denied the motion, finding that the board of directors had a quorum pursuant to its bylaws and West Virginia Code § 31E-8-824. However, on appeal, the Bajadas do not address the merits of the circuit court's order, but rather, assert for the first time on appeal that two sitting board members were still presiding on the board after their elected terms had expired, and that no new election had been held. According to the Bajadas, this made the board of directors' vote to take legal action against them fraudulent.

Critically, neither the four corners of the Bajadas' motion to dismiss, nor the circuit court's order denying their motion addresses this issue. In fact, the Bajadas' motion to dismiss expressly alleges, in multiple paragraphs, that Crystal Lake's board of directors

6

was operating with "four active" board members. At no point in their motion do they allege that any of those board members were improperly seated. Thus, we decline to consider this argument on appeal. *See Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009) (citations and quotations omitted) ("Our general rule is that nonjurisdictional questions ... raised for the first time on appeal, will not be considered."); *PITA, LLC v. Segal*, 249 W. Va. 26, ___, 894 S.E.2d 379, 393 (Ct. App. 2023) (noting that as a general rule, an appellate court will not consider an issue raised for the first time on appeal).

Instead, upon our review of Crystal Lake's bylaws and West Virginia Code § 31E-8-824, we agree with the circuit court's finding that a sitting majority of Crystal Lake's board of directors constitutes a quorum and a majority vote of those members is required for it to take official action. We also agree with the circuit court's determination that a proper quorum existed when the board of directors, by majority vote, instituted legal action against the Bajadas. Therefore, we affirm the circuit court's denial of the Bajadas' motion to dismiss.

Next, we address the Bajadas' argument that the circuit court erred by granting summary judgment to Crystal Lake on all claims and awarding damages. In their attack of the circuit court's summary judgment rulings, the Bajadas again raise several arguments for the first time on appeal; however, for the reasons previously stated, the merits of those arguments will not be addressed.[5] Rather, we turn our attention to reviewing the arguments that are evidenced from the record below. In our review, this Court applies the same standard for granting summary judgment that a circuit court must apply, and that standard states, "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." *United Bank, Inc. v. Blosser,* 218 W. Va. 378, 383, 624 S.E.2d 815, 820 (2005) (quoting *Painter*, 192 W. Va. at 190, 451 S.E.2d at 756, syl. pt. 2).

_____

[5] The following issues were not addressed in the circuit court's order and the Bajadas point to no evidence in the record to show that these arguments were properly raised below: (1) Crystal Lake's alleged failure to enforce violations of its bylaws against other members estopped the board of directors from enforcing them against the Bajadas; (2) Crystal Lake violated equal protection by its selective targeting of the Bajadas; (3) Crystal Lake's failure to sue the Bajadas' farm, Peace Ridge Farm, LLC, and pierce its corporate veil, made them personally immune from the circuit court's imposition of damages; (4) there was no evidence that they are members of Crystal Lake and, thus, are not subject to membership assessments; (5) they are not subject to Crystal Lake's bylaws because they were not provided to them at the real estate closing when they purchased their subdivision property; (6) Crystal Lake lacked authority to charge interest for outstanding membership dues; and (7) the Bajadas had a right to cut any path they chose within the subdivision because another subdivision resident uses a path from their property to access another lot within the subdivision.

"Summary judgment is appropriate if, from the totality of the evidence presented . . . the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syl. Pt. 2, *Williams v. Precision Coil, Inc.,* 194 W. Va. 52, 56, 459 S.E.2d 329, 333 (1995). "[T]he party opposing summary judgment must satisfy the burden of proof by offering more than a mere 'scintilla of evidence' and must produce evidence sufficient for a reasonable jury to find in a nonmoving party's favor." *Id.* at 60, 459 S.E.2d at 337 (quotations and citations omitted).

The Bajadas first argue that they set forth sufficient evidence to establish genuine issues of material fact as to both Crystal Lake's claims and their counterclaim. We begin by addressing Crystal Lake's claims in its amended complaint. Upon review, we agree with the circuit court's determination that Crystal Lake was entitled to summary judgment on Counts I and II. The record establishes that the subdivision's plats clearly set forth that the Recreation Area is jointly owned community property with the subdivision deeds including a non-exclusive right of access to that area. Further, Crystal Lake's bylaws plainly state that no member may use the Recreation Area for anything other than normal recreational purposes without prior approval of Crystal Lake and its members. Here, the Bajadas admitted that they acted unilaterally and that the primary purpose of the road was for ingress and egress to their farm, which they operate as a business.

Contrary to the Bajadas' argument, like the circuit court, we also do not find that the language in the 1975 Deed, or any other document in the record, creates a genuine issue of material fact as to whether the Bajadas had the authority to unilaterally construct the road without prior approval. Rather, we find no error in the circuit court's determination that no such authority exists. We are also unpersuaded by the Bajadas' argument that the circuit court erred by defining the term "normal recreational purposes" under Crystal Lake's bylaws to exclude their road. On this issue, the Bajadas fail to point to where the definition of this term was put at issue below, but more importantly, on appeal, they do not cite to any authority to support their contention that the circuit court erred in defining the subject term. "Although we liberally construe briefs in determining issues presented for review, issues which are not raised, and those mentioned only in passing but are not supported with pertinent authority, are not considered on appeal." *State v. LaRock,* 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996), (citing *State v. Lilly,* 194 W.Va. 595, 605 n. 16, 461 S.E.2d 101, 111 n. 16 (1995) ("casual mention of an issue in a brief is cursory treatment insufficient to preserve the issue on appeal"). Because this issue was not properly developed for appeal, we decline to address the same.

Moreover, "[w]hen a motion for summary judgment is made and supported . . . an adverse party may not rest upon the mere allegations or denials of his pleading, but his response . . . must set forth specific facts showing that there is a genuine issue for trial." *Crain v. Lightner*, 178 W. Va. 765, 768, 364 S.E.2d 778, 781 (1987). Here, the Bajadas' response in opposition to summary judgment and their answers to interrogatories consist of cursory statements and unsupported assertions as to all claims, none of which are

sufficient to create a genuine issue of material fact. Therefore, we affirm the circuit court's rulings with respect to Counts I and II.

Likewise, we are also in agreement with the circuit court's determination on Crystal Lake's breach of contract claim as set forth under Count III, regarding the Bajadas' failure to pay their membership assessments from 2019 to 2022. Looking to the record, the Bajadas openly admitted during their depositions that they paid their assessments from 2016 to 2018 but refused to pay them from 2019 to 2022 because they were dissatisfied with the road maintenance within the subdivision. We find no merit in that defense. First, the Bajadas conceded at deposition that Crystal Lake has the authority under its bylaws and amended articles of incorporation to assess its members with dues and assessments. Moreover, upon our review of Crystal Lake's bylaws and amended articles of incorporation, we agree with the circuit court that Crystal Lake has the express authority to impose and collect assessments from its members and that the Bajadas breached their legal obligation to pay those assessments from 2019 to 2022. The Bajadas have failed to set forth sufficient facts to overcome summary judgment; therefore, we affirm the circuit court's entry of summary judgment on this issue.[6]

Next, we address the circuit court's award of damages and attorney's fees. In its order, the circuit court awarded Crystal Lake compensatory damages in the form of $7,098.94 for the Bajadas' unpaid assessments and $7,394.40 as the fair and reasonable repair costs to restore the Recreation Area. It also awarded $16,654.77 in attorney's fees. From the outset, we note that the majority of the Bajadas' arguments with respect to damages were raised for the first time on appeal; as previously set forth, they will not be considered. Having affirmed the circuit court's entry of summary judgment on the breach of contract claim, we find no error in the circuit court's calculation of damages for the Bajadas' unpaid membership assessments. This amount is supported by the record from the April 24, 2023, hearing, and the Bajadas do not offer a viable argument that is supported by pertinent authority on appeal.

Turning to their remaining arguments, the Bajadas argue that the circuit court based its award of damages to restore the Recreational Area upon false evidence, over their objections, and that $7,394.40 goes beyond what is fair and reasonable to restore the Recreational Area. We disagree and find no error in the circuit court's damages calculation. "In this jurisdiction the burden of proving damages by a preponderance of the evidence rests upon the claimant[.]" Syl. Pt. 4, *Sammons Bros. Const. Co. v. Elk Creek Coal Co.,* 135 W. Va. 656, 65 S.E.2d 94 (1951). Further, "[t]he general rule with regard to proof of damages is that such proof cannot be sustained by mere speculation or conjecture." Syl. Pt.

---

[6] We also note that even if Crystal Lake was deficient in its performance of its obligations, that would not justify one of its members engaging in self-help or non-payment of dues or assessments. The proper remedy would be to either work within the remedies available under bylaws or institute a civil action to enforce the bylaws.

1, *Spencer v. Steinbrecher,* 152 W. Va. 490, 164 S.E.2d 710 (1968). Rather, "[c]ompensatory damages recoverable by an injured party . . . must be proved with reasonable certainty." Syl. Pt. 3, *Kentucky Fried Chicken of Morgantown v. Sellaro,* 158 W.Va. 708, 214 S.E.2d 823 (1975). Upon review, we find the circuit court's award of $7,394.40 for restoration of the Recreation Area to be adequately supported by the record and we decline to disturb this ruling on appeal.

The Bajadas challenge the circuit court's imposition of attorney's fees and costs. Specifically, they maintain that there is no evidence in the record to support a finding that they acted in bad faith, vexatiously, wantonly, or for oppressive reasons. "This Court reviews an award of costs and attorney's fees under an abuse of discretion standard." Syl. Pt. 2, *Auto Club Prop. Cas. Ins. Co. v. Moser*, 246 W. Va. 493, 874 S.E.2d 295 (2022); *see also* Syl. Pt. 3, *Bond v. Bond*, 144 W. Va. 478, 109 S.E.2d 16 (1959) ("[T]he trial [court] is vested with a wide discretion in determining the amount of . . . court costs and counsel fees; and the trial [court's] determination of such matters will not be disturbed upon appeal to this Court unless it clearly appears that [it] has abused [its] discretion."). The circuit court found there was substantial evidence in the record to find that the Bajadas' conduct warranted an imposition of attorney's fees and costs in this case. On this record, we see no abuse of discretion by the circuit court in the amount of costs and attorney's fees it awarded.

Next, we address the circuit court's entry of summary judgment as to the Bajadas' counterclaim. The circuit court found that the Bajadas' bald assertions could not maintain their counterclaim, that the Act's provisions did not apply to Crystal Lake, and that the Bajadas were not entitled to damages. On appeal, the Bajadas maintain that they set forth sufficient facts to overcome summary judgment, the circuit court erred by finding the Act's provisions did not apply to Crystal Lake, and that they were not entitled to damages. We are not persuaded by these arguments. Instead, we agree with the circuit court's observations in its summary judgment order. As previously noted, the Bajadas' response in opposition to summary judgment and their answers to interrogatories contain nothing more than mere allegations, which is insufficient to withstand a motion for summary judgment. Thus, they failed to set forth any facts to create any issue of material fact as to their breach of fiduciary claim against Crystal Lake.

Further, we find no error in the circuit court's finding that Crystal Lake was not subject to the Bajadas' claims under the Act. Instead, we find that in accordance with *Galford*, that the Bajadas' claims under the Act are barred because Crystal Lake was created prior to the effective date of the Act, and that the Bajadas' claims are not among the retroactive provisions listed as applicable to preexisting common interest communities under West Virginia Code § 36B-1-204. *Galford,* 2014 WL 5311389, at * 7. We also find the circuit court correctly stated our law when it determined that the Bajadas' failure to plead compensatory damages foreclosed an award of punitive damages.

10

In a parallel argument, the Bajadas also contend that summary judgment deprived them of their constitutional right to a jury trial. We find no merit to this argument. For over sixty years, our Supreme Court of Appeals has recognized:

> The summary judgment procedure provided by Rule 56 of the West Virginia Rules of Civil Procedure does not infringe upon the constitutional right of a party to a trial by jury; it is not a substitute for a trial, or a trial either by a jury or by the court of an issue of fact, but is a determination that, as a matter of law, there is no issue of fact to be tried.

Syl. Pt. 7, *Aetna Cas. & Sur. Co. v. Fed. Ins. Co. of N.Y.*, 148 W. Va. 160, 161, 133 S.E.2d 770, 772 (1963). While the Bajadas' pleadings made a demand for a jury trial, they were not deprived of their constitutional right to the same. Rather, as the circuit court determined, and we agree, the facts of this case do not create a genuine issue of material fact to be tried. As such, we affirm the circuit court's entry of summary judgment on all issues.

As their final assignment of error, the Bajadas argue that the presiding judge had conflicts of interest, which should have prevented his participation in the case. We decline to address this argument. Not only is there no indication in the record that this issue was raised below, but more importantly, this Court does not have jurisdiction over that issue pursuant to Rule 17 of the West Virginia Trial Court Rules, which governs the process for judicial disqualifications.

Accordingly, we find no error and affirm the circuit court's orders dated January 10, 2023, and June 15, 2023.

Affirmed.

**ISSUED:** July 30, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear